# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE ANN PATTERSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | Case No.  1:19-cv-00174-SKO<br><br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br><br>(Doc. 1) |

## I.    INTRODUCTION

On February 7, 2019, Plaintiff Valerie Ann Patterson ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act (the "Act").  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)

## II.     FACTUAL BACKGROUND

On July 9, 2014, Plaintiff protectively filed an application for DIB and SSI payments, alleging she became disabled on June 20, 2014 due to "mental health" issues. (Administrative Record ("AR") 15, 66, 81, 190–200.) Plaintiff was born on June 23, 1960, and was 53 years old as of the alleged onset date. (AR 66.) Plaintiff has a high school education and past work experience as a home attendant and last worked full-time in approximately 2014. (AR 12, 25, 62, 78.)

**A.**     **Summary of Relevant Medical Evidence[2]**

    **1.**     **Caaithiry Jayaraman, M.D.**

In June 2014, Plaintiff reported to Madera County Behavioral Health Services for mental health concerns and was placed on a "5150 hold" as a danger to herself after she took "an overdose of muscle relaxants in a suicide attempt." (AR 398.) In August 2014, Plaintiff established care with psychiatrist Caaithiry Jayaraman at Madera County Behavioral Health Services. (AR 346.) At the initial evaluation, Dr. Jayaraman noted Plaintiff's mood was depressed and her thought content was delusional and paranoid. (AR 407–08.) Dr. Jayaraman diagnosed Plaintiff with anxiety disorder and major depressive disorder. (AR 410.)

At a follow-up appointment on September 16, 2014, Dr. Jayaraman noted that Plaintiff was prescribed Prozac, Buspar, and trazadone. (AR 413.) In November 2014, Plaintiff reported that the medications improved her mood and anxiety. (AR 346.) On April 3, 2015, Dr. Jayaraman noted that Plaintiff's medication dosage had been increased, and that her medication was "helping with her depressed mood." (AR 351.) On June 11, 2015, Plaintiff reported to Dr. Jayaraman that her general health was "poor," and her mental health had been "not good" twenty out of the past thirty days. (AR 522.) On July 24, 2015, Plaintiff reported "feeling depressed with more crying spells over the past month." (AR 516.) In September 2015, Plaintiff stated her mood and anxiety had improved, and her mother had moved in with her which provided her with needed support. (AR 514.) On March 29, 2016, Plaintiff reported that her "psychiatric medications continue[d] to help her" and her "depression and anxiety levels are not as overwhelming as it has been in the past." (AR

---

[2] As Plaintiff's assignments of error are generally related to Plaintiff's mental impairments, (*see* Doc. 14 at 9–16), this summary is limited to evidence related to Plaintiff's mental impairments.

508.) On May 15, 2017, Plaintiff reported that the medications continued to help and "her mood is less depressed and anxious." (AR 475.)

### 2. Randolph Acedo, M.D.

Plaintiff's primary care physician was internist Randolph Acedo. (*See, e.g.,* AR 330.) On August 14, 2014, Dr. Acedo noted that Plaintiff had a "nervous breakdown" the previous week and reported to him with a "severe headache." (AR 322.) On September 16, 2014, Dr. Acedo noted that Plaintiff had "chronic/recurring headaches" and documented Plaintiff's attitude as "abnormal." (AR 323–25.) On October 16, 2014, Dr. Acedo stated that Plaintiff looked "very depressed-out of it." (AR 358.) On February 11, 2015, Dr. Acedo saw Plaintiff for "knee pain" and headaches and noted that Plaintiff's attitude was "abnormal." (AR 363–65.)

On April 13, 2015, Dr. Acedo noted that Plaintiff was smiling and "attitude was not abormal" and "seemingly better than her last visit." (AR 371.) On May 19, 2015, Dr. Acedo noted that Plaintiff was "[a]lert, well developed, and well nourished," and noted she had a normal attitude, was not depressed, and had improved affect. (AR 373.) On March 17, 2016, Dr. Acedo stated that Plaintiff was calm and collected but still had ideas of self-harm. (*See* AR 464.) Dr. Acedo administered an anxiety screening and the results indicated "minimal anxiety." (AR 463.) On October 19, 2016, Dr. Acedo noted Plaintiff was stressed but controlled emotionally, and that an anxiety screening the prior month indicated "severe anxiety." (AR 444–46.) In December 2016, Plaintiff's appearance and mood was "calm" and improved. (AR 441.) In March 2017, Dr. Acedo described Plaintiff's demeanor as "pleasant," "somber," and "interactive." (AR 434.)

On August 17, 2017, Dr. Acedo submitted a medical source statement regarding Plaintiff's mental RFC. (AR 534–37.) Dr. Acedo diagnosed Plaintiff with depression and "fair to good" prognosis "with proper treatment." (AR 534.) Dr. Acedo opined that Plaintiff had no limitations in understanding and remembering very short and simple instructions; had limitations that would preclude performance for five percent of the day in remembering procedures, making simple decisions, interacting appropriately with the public, asking simple questions, maintaining socially appropriate behavior, responding appropriately to changes, being aware of normal hazards, and setting realistic goals; had limitations that would preclude performance for ten percent of the day in

understanding and carrying out detailed instructions, maintaining attention for extended periods of time, performing activities within a schedule, working in coordination with others, and getting along with coworkers; and had limitations that would preclude performance for fifteen percent or more of the day in traveling in unfamiliar places, completing a normal workday without interruptions from psychologically based symptoms, and sustaining an ordinary routine without special supervision. (AR 534–36.) Dr. Acedo opined Plaintiff would be off task thirty percent or more of the day and absent from work five days or more per month. (AR 536.)

### 3. Mary Lewis, Psy.D.

On January 30, 2015, psychologist Mary Lewis completed a medical source statement after examining Plaintiff. (AR 336–341.) Dr. Lewis noted that Plaintiff was "cooperative" and "pleasant," and her mood was "euthymic" and appropriate. (AR 338.) Dr. Lewis stated that Plaintiff's speech was "easily understood with no obvious . . . deficits," her thought process was "within normal limits . . . linear, logical, coherent, and goal directed," she "denie[d] suicidal ideation," and her intellectual functioning was good. (AR 338.) Dr. Lewis opined that Plaintiff had no significant limitation in any area of mental functioning, including her ability to understand and remember short and simple and detailed instructions, maintain concentration, accept instructions, sustain an ordinary routine, complete a normal workday, interact with coworkers, and deal with changes in the work setting. (AR 340–41.)

### 4. State Agency Physicians

On February 20, 2015, Hillary Weiss, Ph.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's impairments and found that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and had the severe impairment of affective disorders. (AR 73.) In assessing Plaintiff's mental residual functional capacity (RFC),[3]

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

Dr. Weiss opined that Plaintiff was moderately limited in her ability to maintain concentration for extended periods of time, complete a normal workday and workweek without interruptions from psychologically based symptoms, interact appropriately with the general public, and respond appropriately to changes in the work setting. (AR 75–76.) Dr. Weiss opined that Plaintiff had no limitations in all other areas of mental functioning. (*See* AR 75–76.)

Upon reconsideration, on July 16, 2015, another Disability Determinations Service medical consultant, Anna M. Franco, Ph.D., affirmed Dr. Weiss's findings as to the severity of Plaintiff's impairments and her mental RFC. (AR 105–09.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on February 23, 2015, and again on reconsideration on July 16, 2015. (AR 128–132, 135–39.) On January 23, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 140.)

On September 5, 2017, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 31–65.) Plaintiff testified that she worked as a home attendant from approximately 2002–2014, assisting disabled individuals by bathing and feeding them and taking them to the doctor. (AR 38–39.) Plaintiff stated that she stopped working in 2014 because she "had a breakdown . . . It was just too much [stress]." (AR 40.) Plaintiff testified that around that time she could not "think of any other way to pay [her] bills" and she "just gave up and took some pills and . . . just didn't want to do it anymore." (AR 42.) Plaintiff stated "was just under a lot of stress," "wasn't sleeping," and was "seeing things and . . . hearing voices." (AR 42.) Plaintiff stated her current daily routine includes taking her psychiatric medications, staying in her room about half the day, getting up to shower and smoke a cigarette, and painting the lampshades as a hobby. (AR 43–44, 51.) Plaintiff also testified that she spends a fair amount of time with her boyfriend, grandchildren, and children, and walks for exercise. (*See* AR 45, 49–50.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a home attendant, Dictionary of Occupational Titles (DOT) code 354.377-014, which was medium work

---

evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

with a specific vocational preparation (SVP)[4] of 3. (AR 62.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 62.) The VE was also to assume this person was capable of work at all exertional levels, capable of performing jobs of a non-complex nature requiring the performance of nothing beyond simple, repetitive tasks, and could have occasional non-collaborative contact with coworkers and occasional contact with the general public. (AR 62.) The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 62.) The VE testified such a person could perform other jobs in the national economy, however, including: industrial cleaner, DOT code 381.687-018, which is medium work with a SVP of 2 with approximately 1,827,986 jobs available in the national economy; meat trimmer, DOT code 525.687-054, which is medium work with a SVP of 2 with approximately 54,669 jobs available; and equipment cleaner, DOT code 599.684.010, which is heavy work with a SVP of 2 with approximately 45,810 jobs available. (AR 62.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person would be capable of frequently responding appropriately to direct supervision and would be capable of adapting to change on an occasional basis. (AR 63.) The VE testified, based on her expertise, that such a person could not perform Plaintiff's past relevant work or any other work in the national economy. (AR 63.) In a third hypothetical, the ALJ asked the VE to consider an individual with the limitations in the first hypothetical except that the individual was going to be off-task about fifteen percent of the time. (AR 64.) The VE testified that such an individual could not perform any work. (AR 64.)

**C.     The ALJ's Decision**

In a decision dated February 14, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 17–26.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since June 20, 2014, the alleged onset date (step one). (AR 17.) At step two, the

---

[4] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

ALJ found that Plaintiff had severe impairments of depressive disorder and anxiety disorder. (AR 17.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 18.) The ALJ further found at step three that Plaintiff had a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persistence, and maintaining pace, and no limitation in adapting or managing herself. (AR 18.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The individual is capable of performing jobs of a non-complex nature requiring the performance of no more than simple, repetitive tasks, and is able to maintain occasional contact with co-workers and members of the general public.

(AR 19.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 20.) At step five, the ALJ found that Plaintiff could not perform any past relevant work but that jobs exist in significant numbers in the national economy that Plaintiff could perform. (AR 24–25.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 20, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ improperly rejected the opinion of Plaintiff's treating physician Dr. Acedo. (*See* Doc. 14 at 9–16.) The Commissioner responds that the ALJ properly evaluated Dr. Acedo's opinion. (Doc. 17 at 4–8.) For the reasons stated below, the Court agrees with the Commissioner's position.

**A.   The ALJ Properly Evaluated Dr. Acedo's Opinion**

**1.   Legal Standard**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

**2.  Analysis**

Plaintiff alleges—and the record reflects—that Dr. Acedo was Plaintiff's treating physician. (*See, e.g.*, Doc. 14 at 6.) "If . . . a treating [physician's] opinion . . . is well-supported by medically

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are

supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d at 1041); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

The record indicates that Dr. Acedo treated Plaintiff from approximately 2012 until at least 2017 (*See* AR 534–37.) On August 17, 2017, Dr. Acedo submitted a medical source statement on behalf of Plaintiff, in which he opined that Plaintiff had certain functional limitations, and that in Plaintiff's current state, she would be off task thirty percent or more of the day and absent from work at least five days per month. (AR 534–37.)

In weighing Dr. Acedo's opinion, the ALJ stated:

> In August 2017, Dr. Acedo provided a mental residual functional capacity. He diagnosed major depressive disorder. He opined that [Plaintiff] was likely to be off task more than 30 percent, likely to be absent from work five days or more, likely to be unable to complete an eight-hour workday five days or more, and a GAF of 30 to 40, highest in past year 50 []. I assign little weight to this assessment. [Plaintiff] was not impaired to the level opined by this provider. [Plaintiff] interacted with her family, grandchildren, and boyfriend, and reported exercising []. The opinion, while consistent with limitations in regards to concentration and task limitation, was overstated in respect to social functioning and disruption caused by symptoms in respect to functioning.

(AR 23.) In sum, the ALJ partially discounted Dr. Acedo's opinion because the opinion was inconsistent with Plaintiff's activities of daily living and Plaintiff's level of impairment reflected in the medical evidence and Plaintiff's testimony. (AR 23.) Specifically, the ALJ discounted Dr. Acedo's opinion as it related to Plaintiff's social functioning and the disruption caused by Plaintiff's symptoms, but otherwise credited the opinion. (*See* AR 23.) The ALJ adopted the findings of the state agency physicians, as their opinions were consistent with the medical evidence as a whole. (*See* AR 23–24.) Although not specifically noted by the ALJ, Dr. Acedo's opinion was contradicted

by the opinions of the state agency physicians and the consultative examiner Dr. Lewis.[6]  Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for assigning little weight to part of Dr. Acedo's opinion.  *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

Here, the ALJ properly gave little weight to Dr. Acedo's opinion regarding Plaintiff's social functioning and the disruption caused by her symptoms.  (*See* AR 23.)  First, Dr. Acedo's assessment as to Plaintiff's social functioning and the disruptive effect of her symptoms on her work ability was inconsistent with the medical evidence, including the assessments of both state agency physicians and the consultative examiner.  (*Compare* AR 534–37 *with* AR 75–76, 105-109, 336–341.)  For example, Dr. Acedo opined that Plaintiff would be off task thirty percent or more of the day and absent from work five days or more per month due to significant limitations in functioning, while the state agency physicians both opined that Plaintiff had no significant limitation in her ability to maintain regular attendance at work and perform activities within a schedule, and had only moderate limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.[7]  (*See* AR 75–76, 107–108.)  Opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  *Andrews*, 53 F.3d at 1041; *Tonapetyan*, 242 F.3d at 1149.  The opinions of the state agency physicians are consistent with and supported by the medical evidence

---

[6] The ALJ gave little weight to Dr. Lewis's opinion that Plaintiff had no limitations in any area of functioning "based on [Plaintiff's] continuing need for medication, and psychiatric treatment and therapy."  (AR 22.)

[7] Plaintiff discusses at length the meaning of the word "moderate" in the context of Dr. Weiss's opinion, (Doc. 14 at 11–15), asserting that Dr. Weiss must have meant that Plaintiff had "significant" limitation, and takes issue with Dr. Weiss clarifying that by finding Plaintiff to be "moderately limited" in her ability to complete a normal workday or workweek, she meant that Plaintiff could still sustain "consistent pace and persistence sufficient for sustaining simple and detailed tasks."  (AR 76.)  The Court finds nothing improper or inconsistent in Dr. Weiss's clarification of her finding and finds that the state agency physicians' opinions, including Dr. Weiss's opinion, are consistent and supported by the evidence in the record.  *See Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (finding that a "moderate" mental limitation, including a limitation on the ability to maintain concentration, persistence and pace, does not require additional limitation in RFC).  The Court also rejects Plaintiff's related contention regarding the "Programs Operation Manual System" ("POMS") because POMS is not a binding authority and is instead a set of internal agency guidelines.  *See Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006); *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003).

in the record, for example, portions of Dr. Lewis's opinion stating that Plaintiff is "able to function adequately" in a work setting.  (*See, e.g.,* AR 340.)

The ALJ also partially discounted Dr. Acedo's opinion because it was inconsistent with Plaintiff's testimony as to her social limitations.  (*See* AR 23.)  Specifically, the ALJ noted that Plaintiff testified she interacts with her family, grandchildren, and boyfriend, and exercises.  (*See* AR 23.)  For example, Plaintiff testified that she goes out to eat with her boyfriend, goes to her daughter's house to see her and her grandchildren, and gets together with her family on other occasions.  (*See* AR 49–50.)  The Court finds this is a "specific and legitimate" reason to partially discount Dr. Acedo's opinion.  *See, e.g., Matsukado v. Berryhill*, CIV. NO. 19-00045 LEK-KJM, 2020 WL 967337, at *11 (D. Haw. Feb. 27, 2020) ("[T]he inconsistencies between Plaintiff's activities of daily living and Dr. Kipta's opinion support the ALJ's decision to assign little weight to Dr. Kipta's opinion"); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600–602 (9th Cir. 1998).

The Court also notes that Dr. Acedo's opinion was given in the form of a checklist, with very little information as to what clinical findings supported the opinion, or why any particular section on the checklist was marked.  (*See* AR 534–37.)  "A treating physician's opinion that is 'conclusory or brief' and lacks support of clinical findings may be rejected by an ALJ."  *Gomez v. Berryhill*, No. 1:17-cv-01035-JLT, 2019 WL 852118, at *8 (E.D. Cal. Feb. 22, 2019) (citation omitted); *see also Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).  Thus, the ALJ properly rejected portions of Dr. Acedo's opinion for the additional reason that they were given in the form of a checklist with very little accompanying explanation.

Finally, to the extent Plaintiff contends the ALJ improperly rejected any ultimate opinion of Dr. Acedo that Plaintiff was unable to work, that is a conclusion reserved for the Commissioner.

*See Murillo v. Colvin*, No. CV 12-3402-MAN, 2013 WL 5434168, at *4 (C.D. Cal. Sept. 27, 2013) ("[T]he ALJ provided a specific and legitimate reason for disregarding [the treating physician's] ultimate conclusion … that plaintiff is disabled" (citing 20 C.F.R. § 404.1527(e)(1))); *Soroka v. Berryhill*, No. 1:17-CV-01571-GSA, 2018 WL 6243020, at *10 (E.D. Cal. Nov. 29, 2018) ("A conclusory opinion that a claimant is disabled is entitled to little weight since the Commissioner 'will not give any significance to the source of an opinion on issues reserved to the Commissioner,' including whether a claimant is disabled" (quoting *Calhoun v. Berryhill*, 734 F. App'x 484, 487 (9th Cir. 2018)).

In sum, the ALJ's interpretation of the medical evidence, including his interpretation of Dr. Acedo's opinion and the opinions of the state agency physicians, was certainly rational. When evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *See Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 750. Accordingly, the Court will not disturb the ALJ's assessment of Dr. Acedo's opinion.

### IV.     CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **June 22, 2020**                         /s/ *Sheila K. Oberto*
                                                                  UNITED STATES MAGISTRATE JUDGE